OPINION
{¶ 1} Defendant-Appellant, Mark A. Rollins appeals the judgment of the Court of Common Pleas of Paulding County convicting him of knowingly assembling or possessing one or more chemicals that may be used to manufacture methamphetamine and of knowingly obtaining, possessing, or using methamphetamine and sentencing him to three years for the illegal assembly or possession of chemicals for the manufacture of methamphetamine and to eleven months for possession of methamphetamine to be served concurrently with each other and consecutively to the sentence imposed by the Richland County Court of Common Pleas in their Case No. 03-CR-0753. On appeal, Rollins argues that the State failed to present sufficient evidence on each and every element of the counts in the indictment for a jury to find that he committed the crimes beyond a reasonable doubt; that he was denied the right to effective assistance of counsel; that the cumulative errors committed at trial denied him of his constitutional right to a fair trial; and, that trial court erred when it imposed consecutive sentences. Based upon the following discussion, we affirm the jury verdict and conviction of the trial court. However, based upon the Ohio Supreme Court's decision in State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, we vacate Rollins' sentence and remand the matter for further proceedings consistent with Foster.
 {¶ 2} In August of 2004, a Paulding County Grand Jury indicted Rollins under a two-count indictment. Count One of the indictment alleged that on or about July 4, 2004, in Paulding County, Ohio, Rollins did knowingly assemble or possess one or more chemicals that may be used to manufacture methamphetamine, a schedule II controlled substance, in violation of R.C. 2925.041, a felony of the third degree. Count Two of the indictment alleged that on or about May 26, 2004, in Paulding County, Ohio, Rollins did knowingly obtain, possess, or use methamphetamine, a schedule II controlled substance in an amount less than the bulk amount, in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree. In March of 2005, Rollins pled not guilty to both counts.
 {¶ 3} In June of 2005, a jury trial was held. At trial, the following testimony was heard about the events of May 26, 2004: Sheriff David I. Harrow, who has been the Paulding County Sheriff for thirteen years, testified that on May 26, 2004, the Paulding County Sheriff's Department executed a search warrant on 6721 Road 123, in Paulding, Ohio, looking for a clandestine methamphetamine lab operation run out of a house trailer owned by Jeff Holt. Deputy Mark Butler, who was lead officer and the first officer to the house trailer, testified that when he exited his vehicle, he heard sounds coming from behind or inside the house trailer. Deputy Butler testified that he ran to the back of the house trailer and saw someone running toward the woods. Deputy Butler continued that he eventually caught up to the individual, who was handcuffed and detained. Additionally, at trial, Deputy Butler identified the individual, who he had chased and detained, as Rollins and stated that Rollins had given him a false name when he was arrested.
 {¶ 4} Sheriff Harrow testified that after Rollins was detained, the police officers secured the area and began to conduct the search of the residence pursuant to the search warrant. Additionally, Sheriff Harrow testified that he patted down Rollins and found an aluminum foil packet in his pants pocket, which was sent to the Bureau of Criminal Identification 
Investigation in Bowling Green, Ohio. Further, Beverly Wiltshire, the chemical analyst who performed the tests on the aluminum foil packet, testified that the packet contained methamphetamine.
 {¶ 5} Jennifer Keeran, who testified for Rollins, stated that on May 26, 2004, she and Rollins went to the home of Jeff Holt to fix a car. Keeran also testified that she observed Rollins being searched and that she did not observe the police find anything on him.
 {¶ 6} Rollins testified in his own defense. He testified that on May 26, 2004, he went to the Holt residence to fix the clutch on a truck. Rollins stated that when the police arrived, he took off running because he knew that there was a warrant out for his arrest from Mansfield, Ohio. Rollins testified that he was searched by Officer Butler rather than Sheriff Harrow and that the aluminum foil packet was not found on him as Sheriff Harrow had testified.
 {¶ 7} The following testimony was heard with respect to the events of July 4, 2004: Sheriff Harrow testified that he was called to the residence of Robert Gibson at 11532 Rd. 1, Antwerp, Ohio, in Paulding County, to investigate a suspected methamphetamine lab. Sheriff Harrow testified that he was advised that the suspected lab might be an operating methamphetamine lab because Rollins was taken by life-flight from Gibson's residence due to chemical burns.
 {¶ 8} Gibson testified that on July 4, 2004, he was sleeping at his residence when he woke up to a loud hissing sound. Gibson continued that his daughter, Jessica Best, came into his bedroom and said not to go outside because "the valve of the propane tank had been knocked off and anhydrous was spraying out." (Trial Tr. 121). Gibson then testified that he went to the front door of his residence, where Rollins ran up to him. Gibson noted that Rollins could not breathe, was gasping for air, and was asking for help. Additionally, Gibson noted that blood was starting to come out of Rollins' pores.
 {¶ 9} Jessica Best testified that on July 4, 2004, she was living with her father, Robert Gibson. Best stated that she was sleeping that afternoon, when she was woken up by her dog barking. Best continued that she walked outside and saw Rollins take a white propane tank out of a vehicle. Best also testified that Rollins mentioned to her that the tank was leaking and that he asked her to go inside to get a pair of vise grips so he could tighten up the valve on the tank. Best continued that while she was going back into the house to wake up her father; she heard a loud hissing sound and saw Rollins, whose skin was all pink, running around to the front of the house.
 {¶ 10} Keeran testified that on July 4, 2004, she and Rollins went to the Gibson residence for a cookout. Keeran testified that Gibson and Best both came out of the house when they arrived. Keeran stated that she and Rollins only brought potato salad and chips to Gibson's residence. Keeran also said that she and Rollins did not bring a propane tank to Gibson's residence. Additionally, Keeran testified that while she was inside the house to use the bathroom, she heard the hissing sound. Keeran continued that after she heard the hissing sound, she ran outside and saw Rollins holding his neck unable to breathe and saw blood coming out of his pores.
 {¶ 11} Rollins testified that on July 4, 2004, he went to the Gibson residence for a cookout. Rollins said that when he arrived at the house, Best and Gibson came out and he asked them where the grill was for the cookout. Rollins testified that he was told that the grill was on the side of the house. Rollins continued that he told Gibson that the propane tank for the grill was empty and that Gibson told him there was another tank in the barn. Rollins testified that he went into the barn, got the tank, and, when he set it down, the tank exploded. However, Gibson testified that on July 4, 2004, he did not own a working gas grill or any propane tanks.
 {¶ 12} Sheriff Harrow also noted that when he arrived at the scene, on July 4, 2004, he located a twenty-pound propane tank in a cornfield south of the residence. Sheriff Harrow also stated that he was familiar with anhydrous ammonia and that the area surrounding the tank contained the odor of anhydrous ammonia.
 {¶ 13} Captain Butler testified that on July 4, 2004, he was called to the scene. Captain Butler noted that he had received special training on the production of methamphetamines and the chemicals used to manufacture methamphetamines. Additionally, Captain Butler testified that when he arrived at the scene, he noticed that a propane tank was iced up, which was a distinct characteristic of tanks containing anhydrous ammonia.
 {¶ 14} Upon completion of the testimony and arguments, the jury returned guilty verdicts on both counts of the indictment. Subsequently, the trial court sentenced Rollins to three years for the illegal assembly or possession of chemicals for the manufacture of methamphetamine in violation of R.C. 2925.041, a felony of the third degree, and to eleven months for possession of methamphetamine in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree. The trial court ordered these sentences to be served concurrently with each other. Additionally, the trial court stated on the record:
The Court further finds that consecutive sentences arenecessary to protect the public and to punish the Defendant andthat consecutive sentences are not disproportionate to theconduct of the Defendant and that the Defendant's criminalhistory shows that consecutive terms are necessary to protect thepublic from future crime by the Defendant. It is thereforeordered that the sentences imposed herein shall be servedconsecutively to the sentence imposed by the Richland CountyCourt of Common Pleas in their Case No. 03-CR-0753.
(Sentencing Tr. 4).
 {¶ 15} It is from this judgment that Rollins appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I The State failed to present sufficient evidence of each andevery element of the crimes of possession of a controlledsubstance in violation of Ohio Revised Code 2925.11 (A)(C)(1)(a)as alleged in Count Two of the indictment and of possession ofchemicals to manufacture a schedule I or II controlled substancein violation of Ohio Revised Code Section 2925.041 as alleged inCount One of the indictment for a jury to find that the Appellantcommitted the crime beyond a reasonable doubt.
 Assignment of Error No. II Appellant was denied the right to effective assistance ofcounsel and he was prejudiced as a result.
 Assignment of Error No. III Due to the cumulative errors committed at trial, Appellant wasdenied his constitutional right to a fair trial.
 Assignment of Error No. IV The trial court erred when it imposed consecutive sentences.
 Assignment of Error No. I {¶ 16} In his first assignment of error, Rollins asserts that the jury verdict is not supported by sufficient evidence. Rollins contends that the State failed to present sufficient evidence of every element of the offenses of possession of chemicals for the manufacture of a controlled substance and possession of a controlled substance such that a rational jury could have found that all of the elements of each crime had been proven beyond a reasonable doubt. Specifically, Rollins asserts that the State did not present sufficient testimony to establish that he was in possession of anhydrous ammonia. Additionally, Rollins asserts that the State did not present any evidence to establish that methamphetamine was a controlled substance listed in schedule I or II of R.C. 3719.41.
 {¶ 17} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, para. two of syllabus, superseded by state constitutional amendment on other grounds as recognized in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 18} As noted above, Rollins was charged with and convicted of possession of chemicals to manufacture a schedule I or II controlled substance in violation of R.C. 2925.041, as alleged in Count One of the indictment, a felony of the third degree, and possession of a controlled substance in violation of R.C.2925.11(A)(C)(1)(a) as alleged in Count Two of the indictment, a felony of the fifth degree. We will review each conviction separately.
 Count One — R.C. 2925.041 {¶ 19} With regards to Count One of the indictment, Rollins asserts that the evidence was insufficient to support his conviction for possession of chemicals to manufacture a schedule I or II controlled substance in violation of R.C. 2925.041. Specifically, Rollins asserts that the State did not present sufficient testimony that he was in possession of anhydrous ammonia and that the State did not present any evidence to establish that methamphetamine is a controlled substance in schedule I or II.
 {¶ 20} R.C. 2925.041 provides in pertinent part:
(A) No person shall knowingly assemble or possess one or morechemicals that may be used to manufacture a controlled substancein schedule I or II with the intent to manufacture a controlledsubstance in schedule I or II in violation of section 2925.04 ofthe Revised Code.
 (B) In a prosecution under this section, it is not necessaryto allege or prove that the offender assembled or possessed allchemicals necessary to manufacture a controlled substance inschedule I or II. The assembly or possession of a single chemicalthat may be used in the manufacture of a controlled substance inschedule I or II, with the intent to manufacture a controlledsubstance in either schedule, is sufficient to violate thissection.
 {¶ 21} Under R.C. 2925.041, the essential elements for the illegal assembly/possession of chemicals for the manufacture of drugs are: "(1) knowingly (2) assemble or possess (3) one or more chemicals that may be used to manufacture a schedule I or II controlled substance (4) with the intent (5) to manufacture the schedule I or II controlled substance." State v. Perry (2004),157 Ohio App.3d 443, 448, 2004-Ohio-3020, at ¶ 13; see R.C.2925.041.
 {¶ 22} R.C. 2925.01(K) provides "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession of drugs can be either actual or constructive. See State v. Haynes (1971),25 Ohio St.2d 264. The Ohio Supreme Court has held that a person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. State v. Wolery
(1976), 46 Ohio St.2d 316, 329, certiorari denied (1976),429 U.S. 932. Furthermore, drugs that are found in plain view and are in close proximity to a defendant can establish constructive possession of those drugs. State v. Pruitt (1984),18 Ohio App.3d 50, 58; see, also, State v. Boyd (1989),63 Ohio App.3d 790. Circumstantial evidence alone is sufficient to support the element of constructive possession. Jenks,61 Ohio St.3d at 272-73.
 {¶ 23} Rollins argues the State did not present sufficient testimony that he was in possession of anhydrous ammonia. Specifically, Rollins argues that the State presented evidence that the area around the propane tank smelled like anhydrous ammonia and that the propane tank appeared to be iced up, which would be consistent with anhydrous ammonia; however, the State did not present any evidence that the substance in the tank was actually anhydrous ammonia.
 {¶ 24} As noted above, Captain Butler testified that on or about July 4, 2004, when he arrived at Gibson's residence, he noticed that the propane tank was iced up, which was a distinct characteristic of tanks containing anhydrous ammonia. Captain Butler testified as to his training and experience with respect to "clandestine laboratories", which included methamphetamine labs. He stated he was trained in detecting and evaluating such labs, and in collecting evidence from the labs. (Trial Tr. 151-52). He testified that anhydrous ammonia is frequently transported in propane tanks, that "[a]nhydrous will make these small tanks freeze up," and that anhydrous ammonia "eats away at brass fitting[s], * * * and eventually makes them (Sic.) fittings fail." (Trial Tr. 156-57). Additionally, Sheriff Harrow, who testified that he was familiar with anhydrous ammonia, stated that the area surrounding the propane tank smelled of anhydrous ammonia.[1] Further, Jessica Best testified that she saw Rollins take a propane tank out of a vehicle, and that the tank was leaking. Robert Gibson testified that he smelled anhydrous ammonia and was familiar with the odor because the local farmers used it.[2]
 {¶ 25} While the evidence presented was limited and some was circumstantial, we find that there was sufficient evidence that Rollins was in possession of anhydrous ammonia.
 {¶ 26} Rollins also argues that the State did not present any evidence to establish that methamphetamine is a controlled substance in schedule I or II. Rollins asserts that the State must present evidence which shows that methamphetamine is a controlled substance in schedule I or II.
 {¶ 27} As noted above, the State provided sufficient evidence for the trier of fact to determine that Rollins was in possession on anhydrous ammonia, which is a chemical that may be used in the manufacturing of methamphetamine. However, the determination of whether methamphetamine is a controlled substance in schedule I or II is a question of law for the court, not a question of fact for the jury. Therefore, while the State is required to prove that the defendant intended to manufacture methamphetamine, the State is not required to provide evidence that methamphetamine is a controlled substance in schedule I or II of R.C. 3719.41, because by law, methamphetamine is a controlled substance as listed in Schedule II. R.C. 3719.41, Schedule II(C)(2).
 {¶ 28} Accordingly, when reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of R.C.2925.041 proven beyond a reasonable doubt.
 Count Two — R.C. 2925.11(A) (C)(1)(a) {¶ 29} Rollins also argues that since the State failed to present any evidence to establish that methamphetamine is a controlled substance, the State failed to establish an essential element of R.C. 2925.11(A). We disagree.
 {¶ 30} R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." As noted above, the determination of whether methamphetamine is a controlled substance is a question of law for the court, not a question of fact for the jury. Therefore, while the State is required to name and prove possession of a specific controlled substance, the State is not required to provide evidence that the named substance, in this case methamphetamine, is a controlled substance, because by law, methamphetamine is a controlled substance listed in Schedule II. R.C. 3719.41, Schedule II(C)(2); see also State v. Davis, 5th Dist. No. 2003CA00198,2004-Ohio-3527, at ¶ 61. Clearly, if the named substance was not one that is listed in the appropriate schedule the charge could be disposed of by a motion for acquittal pursuant to Crim.R. 29.
 {¶ 31} Accordingly, when reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of R.C.2925.11(A) (C)(1)(a) proven beyond a reasonable doubt.
 {¶ 32} Since we find that when reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of both Count One and Count Two proven beyond a reasonable doubt, Rollins' first assignment of error is overruled.
 Assignment of Error No. II {¶ 33} In his second assignment of error, Rollins asserts that he was denied the right to effective assistance of counsel and was prejudiced as a result. Specifically, Rollins claims that his trial counsel erred by failing to object to and/or move to strike the admission of highly prejudicial and irrelevant evidence and testimony at the trial; that his trial counsel failed to file a motion to suppress the evidence allegedly found on Rollins on May 26, 2004; and, that his trial counsel erred by failing to request separate trials. We disagree.
 {¶ 34} An ineffective assistance of counsel claim requires proof that a trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, para. two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at para. three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433, superseded by Constitutional amendment on other grounds as recognized by State v. Smith (1997), 80 Ohio St.3d 89, 103.
 {¶ 35} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (Dec. 13, 1989), 2d Dist. No. 10564. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id. quoting Smith v. Murray (1986), 477 U.S. 527.
 {¶ 36} Rollins raises three reasons for claiming ineffective assistance of counsel. First, Rollins contends that his defense counsel was ineffective for failing to object to and/or moving to strike the admission of highly prejudicial and irrelevant evidence at the trial. Specifically, Rollins asserts that some of the State's admitted exhibits were not relevant as to whether Rollins committed the crimes with which he was charged, and they should have been objected to at trial. Also, Rollins asserts that Deputy Butler's testimony regarding what he believed were the contents of certain exhibits should have been objected to at trial. A defense counsel's failure to object to exhibits and testimony may be tactical or strategic in nature and such tactical or strategic decisions would not fall below an objective standard of reasonable representation. State v. Jackson, 3d Dist. No. 14-03-28, 2004-Ohio-4016, at ¶ 19 n. 2.
 {¶ 37} Second, Rollins argues that his defense counsel was ineffective for failing to file a motion to suppress evidence found on his person on May 26, 2004. Specifically, Rollins contends that since he was not named in the search warrant, contraband seized from him cannot be introduced as evidence against him; therefore, his counsel was ineffective by failing to file a motion to suppress the evidence allegedly found on him on that date.
 {¶ 38} The Ohio Supreme Court has held that "[f]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel," but must be evaluated on a case by case basis. State v. Madrigal (2000), 87 Ohio St.3d 378, 389, quoting Kimmelman v. Morrison (1986), 477 U.S. 365, 384. It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing. State v. McDuffie
(May 23, 2001), 3d Dist. No. 9-2000-92. To prove ineffective assistance of counsel, the defendant must also prove that there was a reasonable probability that the motion would have been successful. State v. Wilkins, 3d Dist. No. 9-02-23, 2002-Ohio-4234 at ¶ 7. (Citations omitted).
 {¶ 39} An individual on premises subject to a search warrant may be justifiably searched if there is "probable cause to believe that such persons are participating in the criminal activity or that there is probable clause to believe that evidence which might be concealed or destroyed is to be found upon the person searched." State v. Owens (Oct. 1, 1981), 8th Dist. No. 42521 citing Michigan v. Summers (1981),452 U.S. 692. Here, the police were executing a search warrant on a suspected methamphetamine lab. When the police arrived, Rollins ran and had to be chased on foot. Thus, there is probable cause that Rollins was participating in criminal activity or carrying evidence that could be concealed or destroyed. Therefore, we find that there is not a reasonable probability that the motion to suppress would have been successful.[3] Accordingly, we find that the defense counsel's decision to not file a motion to suppress would not fall below an objective standard of reasonable representation.
 {¶ 40} Third, Rollins asserts that his counsel was ineffective for failing to request separate trials. Specifically, Rollins asserts that having a single trial for both counts was prejudicial because the jury was free to consider evidence of both of incidents in reaching a verdict for any one offense.
 {¶ 41} Pursuant to Crim.R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." However, Crim.R. 14 provides a defendant relief from prejudicial joinder and provides:
If it appears that a defendant or the state is prejudiced by ajoinder of offenses * * * in an indictment, information, orcomplaints, the court shall order an election or separate trialof counts, * * * or provide such other relief as justicerequires.
 {¶ 42} It is a general rule that "joinder of offenses is favored to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish inconvenience to witnesses." State v. Powell (Dec. 15, 2000), 2d Dist. Nos. 18095, 99-CR-631, citing State v. Torres (1981),66 Ohio St.2d 340, 343. The Ohio Supreme Court has further indicated that the joinder is to be "liberally permitted." Statev. Schaim (1992), 65 Ohio St.3d 51, 58.
 {¶ 43} To effectively claim error in the joinder of multiple counts in a single trial, appellant must make an affirmative showing that his rights were prejudiced. Powell, supra. The State can rebut a defendant's claim of prejudice in two different ways. Under the first method, appropriately referred to as the "other acts" test, the State must exhibit that the evidence to be introduced at the trial of one offense would also be admissible at the trial of the other severed offense under the "other acts" portion of Evid.R. 404(B). State v. Schiebel (1990),55 Ohio St.3d 71, 86-87. Alternatively, under the second method, referred to as the "joinder test," the State "is merely required to show that evidence of each crime joined at trial is simple and direct." State v. Lott (1990), 51 Ohio St.3d 160, 163. The purpose of the "joinder test" is to ensure that the jury does not confuse the offenses or improperly cumulate the evidence of the various crimes. Id. at 163-64. Instead, this test "focuses on whether the trier of fact is likely to consider `evidence of one [offense] as corroborative of the other.'" State v. Wiles
(1991), 59 Ohio St.3d 71, 77.
 {¶ 44} The date involved in Count One of the indictment was July 4, 2004, while the date involved in Count Two of the indictment was May 26, 2004. Rollins contends that simultaneously trying both counts from the separate dates improperly and prejudicially provided additional credibility to the allegations from each separate date. Rollins' argument is without merit.
 {¶ 45} The underlying offense in Count One of the indictment is separate and distinct from that in Count Two. The time frame for Count One was distinct from that of Count Two. Simple and direct evidence was adduced at trial that separately identifies each count and its relation to the individual complaining witness. Rollins' counsel was not required to perform a futile act, and we see little likelihood that, even if he had requested separate trials, the trial court would have acquiesced to such a motion. Thus, counsel's failure to request separate trials does not rise to the level of ineffective assistance.
 {¶ 46} Accordingly, Rollins' second assignment of error is overruled.
 Assignment of Error No. III {¶ 47} In his third assignment of error, Rollins asserts that due to the numerous violations of the Rules of Evidence in this case, he was denied his constitutional right to a fair trial. InState v. DeMarco (1987), 31 Ohio St.3d 191, para. two of the syllabus, the Ohio Supreme Court found that a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. Having found that Rollins' assignments of error pertinent to his trial as well as the evidentiary issues are without merit, we conclude that the cumulative effect of the errors does not warrant reversal.
 {¶ 48} Accordingly, Rollins' third assignment of error is overruled.
 Assignment of Error No. IV {¶ 49} In his fourth assignment of error, Rollins asserts that the trial court failed to follow the proper procedure in sentencing him to serve consecutive sentences as required by R.C.2929.14(E)(4). Specifically, Rollins argues that when the trial court made the sentences for Count One and Count Two concurrent to each other yet consecutive to the sentence of the Richland County Court of Common Pleas in their Case No. 03-CR-0753, the trial court erred as a matter of law.
 {¶ 50} The Ohio Supreme Court recently addressed constitutional issues concerning felony sentencing in Foster,supra. In Foster, the Court held that portions of Ohio's sentencing framework are unconstitutional and void, including R.C. 2929.14(E). Foster, supra, at ¶¶ 97, 103.
 {¶ 51} Pursuant to Foster, Rollins' fourth assignment of error is sustained.
 {¶ 52} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, in assignments of error I, II, and III, but having found error prejudicial to appellant herein, in the particulars assigned and argued, in assignment of error IV, we affirm the jury verdict and conviction, but we vacate Rollins' sentence and remand the matter for further proceedings consistent with Foster.
 Judgment Affirmed in Part, Reversed in Part, And CauseRemanded.
 BRYANT, P.J. and SHAW, J., concur.
[1] While Sheriff Harrow did not testify as to any personal experience with or training in the identification of anhydrous ammonia, there was no objection to his testimony at trial.
[2] Several witnesses testified to Mr. Rollins physiological reactions to exposure to the substance that leaked from the propane tank. However, we find no testimony as to the cause of the reactions, or to the extent of any injuries he might have suffered. Although Rollins made a slight reference to being "life-flighted," he was never asked to where he was flown, for what purpose, or if he received medical treatment. A witness was called to identify some of Rollins medical records, but the records were not offered or admitted as evidence.
[3] Further, once Rollins had been detained, it is highly unlikely that he would have been released without a check for outstanding warrants. The defendant admits that there was an outstanding warrant for his arrest. Once that was discovered, he would have been subject to a search pursuant to arrest, and therefore, the discovery of the evidence on his person was inevitable. State v. Perkins (1985), 18 Ohio St.3d 193
(illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation).