OPINION
{¶ 1} Appellant, Marc J. David, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court sentenced David to a seven-year prison term for his convictions relating to possession and trafficking of methamphetamine.
 {¶ 2} In December 2004, "Tom" called Great Lakes Oxygen and asked about purchasing tanks of anhydrous ammonia. It was later determined that "Tom" was actually Ryan Newsome, David's nephew. In addition to calling Great Lakes Oxygen, Newsome went to Great Lakes Oxygen seeking to buy anhydrous ammonia tanks. Newsome was informed that he would be unable to purchase the tanks on credit. Due to the suspicious nature of the call, workers at Great Lakes Oxygen informed the Lake County Narcotics Agency about the call.
 {¶ 3} On December 29, 2004, Newsome contacted Great Lakes Oxygen, again using the alias "Tom," and made an additional inquiry about purchasing anhydrous ammonia tanks. Newsome was informed that there were tanks of anhydrous ammonia available for purchase. Members of the Lake County Narcotics Agency participated in the plan to get Newsome to purchase the anhydrous ammonia.
 {¶ 4} David drove Newsome to Great Lakes Oxygen in his pickup truck. David waited in his truck while Newsome went inside and paid $870, in cash, for two one-hundred-fifty-pound tanks of anhydrous ammonia. Lake County Narcotics Agents, posing undercover as employees of Great Lakes Oxygen, assisted Newsome in loading the tanks into the bed of David's truck. David's truck was stopped by law enforcement officials moments after it left the parking lot of Great Lakes Oxygen.
 {¶ 5} David and Newsome were both arrested. David had small, plastic, "jeweler" bags and two knives in his pockets. David's vehicle was impounded. During the inventory search, officers found two one-hundred-fifty-pound tanks of anhydrous ammonia in the bed of the truck. In the cab of the truck, the officers discovered a digital scale, which had methamphetamine residue on it. The officers also found two ball valves and two plastic bags, one of which contained methamphetamine residue. In the center console, the officers found two "AA" lithium batteries and a bottle marked pseudophedrine. Inside the pseudophedrine bottle, the officers found five jeweler bags, each containing approximately one-half of a gram of methamphetamine. Finally, behind the driver's seat, the officers found a box with a large plastic bag in it. Inside the bag were 132.21 grams of methamphetamine.
 {¶ 6} At the Painesville Police Station, David waived hisMiranda rights.[1] In his statement, David denied owning the drugs and tanks found in his truck. However, he admitted to being an everyday user of methamphetamine. He stated he had been previously arrested on methamphetamine charges. He indicated he was to get free methamphetamine for driving Newsome to Great Lakes Oxygen. Also, he stated he had gone to Great Lakes Oxygen with Newsome on a prior occasion to purchase anhydrous ammonia.
 {¶ 7} David was indicted with five counts. Count one was illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, a third-degree felony. This count also contained a forfeiture specification, pursuant to R.C. 2925.42, charging that David forfeit $870, due to the fact the money was associated with the commission of a felony. Count two was aggravated possession of drugs, in violation of R.C.2925.11, a second-degree felony. Count three was aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a second-degree felony. Count four was aggravated possession of drugs, in violation of R.C. 2925.11, a fifth-degree felony. Count five was aggravated trafficking in drugs, in violation of R.C.2925.03(A)(2), a fourth-degree felony.
 {¶ 8} David pled not guilty to the charges against him, and a jury trial was held. Following the state's case-in-chief, defense counsel moved for acquittal pursuant to Crim.R. 29. The trial court overruled David's motion for acquittal. David testified on his own behalf. Following David's testimony, the defense rested and renewed its Crim.R. 29 motion. The trial court again overruled the motion. The jury returned guilty verdicts on all five counts.
 {¶ 9} The trial court sentenced David to a four-year prison term on count one; a seven-year prison term on count two; a seven-year prison term on count three; an eleven-month prison term on count four; and a seventeen-month prison term on count five. All of these terms were ordered to be served concurrently to each other, resulting in David's aggregate prison term being seven years.
 {¶ 10} David raises three assignments of error. His first assignment of error is:
 {¶ 11} "The trial court erred to the prejudice of appellant when it did not grant appellant's Rule 29 motion, as there was insufficient evidence by which to convict appellant."
 {¶ 12} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction.[2]
When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[3]
 {¶ 13} David was charged with two counts of aggravated possession of drugs, in violation of R.C. 2925.11, which provides, in part:
 {¶ 14} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 15} "* * *
 {¶ 16} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 17} "(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II * * * whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:
 {¶ 18} "(a) Except as otherwise provided * * * aggravated possession of drugs is a felony of the fifth degree[.]
 {¶ 19} "* * *
 {¶ 20} "(c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree[.]"
 {¶ 21} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[4]
 {¶ 22} The state met its burden of providing sufficient evidence that the contraband found in David's truck was methamphetamine. The identity of the substances as methamphetamine was established by testing conducted at the Lake County Crime Lab. Further, we note methamphetamine is a schedule II controlled substance.[5] The bulk amount for methamphetamine is three grams.[6]
 {¶ 23} While the state did not present any direct evidence that David was in actual possession of the methamphetamine found in his truck, this does not invalidate his convictions.
 {¶ 24} "Possession of drugs can be either actual or constructive."[7] Even if the contraband is not in a suspect's "immediate physical possession," he may still be found to be in constructive possession of the item, provided the evidence demonstrates that he "was able to exercise dominion and control over the controlled substance."[8] To prove constructive possession, "[i]t must also be shown that the [defendant] was conscious of the presence of the object."[9]
 {¶ 25} The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'"[10] The Third Appellate District held constructive possession of contraband may be supported by circumstantial evidence alone.[11]
 {¶ 26} The state presented evidence that a bag containing 132.21 grams of methamphetamine was found in David's truck behind the driver's seat and that five jeweler bags, located in the pseudophedrine bottle found in the console of David's truck, each contained one-half of a gram of methamphetamine. The fact that the drugs were found in a vehicle owned by David, in which he was one of the last people present, weighs in support of a finding that David was in constructive possession of the methamphetamine found in his truck.[12] The fact that all of the methamphetamine was in the immediate reach of David also supports a finding of construction possession.[13] As stated by the Tenth Appellate District, "it is reasonable to infer that a defendant knowingly possesses cocaine when he is shown to have had dominion and control over a bag of cocaine which was next to his seat in a car."[14] Moreover, Special Agent 62 testified that the stop of David's truck and the arrest of David and Newsome happened very quickly, in that Newsome would not have had the opportunity to transfer the box containing 132.21 grams of methamphetamine from his possession to behind the driver's seat.
 {¶ 27} Finally, the additional circumstantial evidence presented by the state was David's statement. While he denied ownership of the methamphetamine, David admitted he had used methamphetamine daily and had previously been arrested on a methamphetamine charge. The fact that David had an admitted methamphetamine habit makes it more likely that he possessed the methamphetamine found in his vehicle.
 {¶ 28} The state provided sufficient evidence going to all the elements of aggravated possession of drugs. Therefore, the trial court did not err by denying his motion for acquittal on these counts.
 {¶ 29} David was charged with two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), which provides, in part:
 {¶ 30} "(A) No person shall knowingly do any of the following:
 {¶ 31} "* * *
 {¶ 32} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.
 {¶ 33} "* * *
 {¶ 34} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 35} "(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II * * * whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:
 {¶ 36} "(a) Except as otherwise provided * * * aggravated trafficking of drugs is a felony of the fourth degree[.]
 {¶ 37} "* * *
 {¶ 38} "(d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking of drugs is a felony of the second degree[.]"
 {¶ 39} David argues that the state did not present sufficient evidence that he was distributing drugs. The state presented evidence that the methamphetamine was in David's truck when he was leaving Great Lakes Oxygen. At the very least, this is evidence that David was "transporting" the drugs.
 {¶ 40} Also, David contends that the state did not demonstrate that he had the requisite mental state to sustain a conviction for aggravated trafficking in drugs. He argues there was no evidence presented that he, or anyone else, intended sell the methamphetamine. We disagree.
 {¶ 41} David had small "jeweler" bags in his pocket when he was arrested. Inside the pseudophedrine bottle found in the console of David's truck, the officers found five jeweler bags, each of which contained approximately one-half gram of methamphetamine. Special Agent 62 testified that jeweler bags are commonly used in the sale of powder drugs such as cocaine and methamphetamine. He also testified that the fact there were similar quantities of methamphetamine in the individual baggies indicates they were packaged for sale. He stated an individual intending to use the drug for personal consumption would not be concerned with precisely measuring the amounts.
 {¶ 42} The officers discovered a digital scale, which Special Agent 62 testified is capable of measuring drugs in partial-gram increments. The scale contained methamphetamine residue. The presence of a digital scale is further evidence that the methamphetamine was being prepared for sale.[15]
 {¶ 43} Finally, we note the total amount of methamphetamine, 132.21 grams, found in David's truck. Special Agent 62 testified that this amount was considerably more than he finds in a typical methamphetamine arrest. Further, David testified that he used approximately one quarter of a gram a day to support his methamphetamine habit. Using this number as a guide, there were over five hundred daily doses of methamphetamine in David's truck. This amount strongly suggests that the drugs were intended to be sold.
 {¶ 44} The state presented sufficient evidence on all the elements of aggravated trafficking of drugs; thus, the trial court did not err by denying his Crim.R. 29 motion and submitting the matter to the jury.
 {¶ 45} David was charged with one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, which provides, in part:
 {¶ 46} "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section2925.04 of the Revised Code.
 {¶ 47} "(B) In a prosecution under this section, in is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule is sufficient to violate this section."
 {¶ 48} David argues that the state did not present sufficient evidence that he intended to manufacture methamphetamine. Special Agent 62 testified to portions of David's statement at the police station, wherein David stated that he went with Newsome to purchase anhydrous ammonia, he had made a similar trip to Great Lakes Oxygen with Newsome, and that David was to receive free methamphetamine in exchange for helping Newsome obtain the tanks of anhydrous ammonia. This evidence suggests David was fully aware that the purpose of the trip was to purchase anhydrous ammonia, which, according to the testimony of Special Agent 62, is commonly used in the manufacture of methamphetamine.
 {¶ 49} Special Agent 62 testified the ball valves found in the cab of David's truck could be used to transfer the anhydrous ammonia from the one-hundred-fifty-pound tanks into smaller, twenty-pound tanks — like those used for propane grills.
 {¶ 50} David argues that the lithium batteries were not "stripped" to expose the lithium. Special Agent 62 testified that methamphetamine "cooks" typically remove the lithium at the very last minute, since it is reactive when exposed to water.
 {¶ 51} Finally, David notes there was no evidence that pseudophedrine was found in his vehicle. He argues that the absence of this necessary ingredient renders the state's evidence insufficient to sustain his conviction. We disagree. Again, it is not necessary for David to have possessed all of the necessary ingredients to manufacture methamphetamine.[16] Rather, possession of a single ingredient may be sufficient.[17] InState v. Rollins, the Third Appellate District concluded that, when the other elements of R.C. 2925.041 are met, possession of anhydrous ammonia, alone, is sufficient to uphold a conviction for illegal assembly or possession of chemicals for the manufacture of drugs.[18]
 {¶ 52} The trial court did not err by denying David's Crim.R. 29 motion in relation to the count of illegal assembly or possession of chemicals for the manufacture of drugs.
 {¶ 53} David's first assignment of error is without merit.
 {¶ 54} David's second assignment of error is:
 {¶ 55} "The jury's finding that appellant was guilty of two counts of aggravated possession of drugs, two counts of aggravated trafficking of drugs, and one count of illegal assembly or possession of chemicals for the manufacture of drugs was against the manifest weight of the evidence."
 {¶ 56} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 57} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[19]
 {¶ 58} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[20]
 {¶ 59} David testified on his own behalf. He denied owning any of the methamphetamine found in his truck. He testified that he was unaware of the bag containing over one hundred thirty grams of methamphetamine. He theorized that this bag was planted in his truck. He stated the bottle of pseudophedrine, and the methamphetamine found in it, was not in his truck when he was arrested. Finally, he testified that he was under the impression that Newsome was going to Great Lakes Oxygen to purchase tanks of acetylene, not anhydrous ammonia.
 {¶ 60} The jurors were in the best position to assess the credibility of David's testimony. Likewise, they were in the best position to weigh his testimony against the evidence presented by the state, which included the physical evidence found in David's truck and David's statement given on the night of his arrest, in which he admits to going to Great Lakes Oxygen with Newsome to purchase anhydrous ammonia.
 {¶ 61} We do not consider this to be the "exceptional" case in which the evidence weighs heavily against the convictions. In addition, the jury did not lose its way or create a manifest miscarriage of justice by finding David guilty of these charges.
 {¶ 62} David's second assignment of error is without merit.
 {¶ 63} David's third assignment of error is:
 {¶ 64} "Appellant was denied a fair trial due to prosecutorial misconduct."
 {¶ 65} David objects to three comments made by the assistant prosecutor during closing argument.
 {¶ 66} We note that counsel is to be given latitude during summation.[21] In addition, prosecutorial misconduct will not be a ground for error unless the defendant is denied a fair trial.[22] Also, this court has held that "`it is not improper for a prosecutor to comment upon the evidence in [a] closing argument and to state the appropriate conclusions to be drawn therefrom.'"[23]
 {¶ 67} The first comment made by the assistant prosecutor, to which David objects is:
 {¶ 68} "I submit to you folks, if someone had planted that in [David's] vehicle, some third party, that mystery person, they are not going to drop $13,000.00 worth of product. They might drop a couple bags, small ones. That product's there the State submits because that it is that valuable that he couldn't leave it behind, he keeps it close to him."
 {¶ 69} The second comment is:
 {¶ 70} "[David] wants you to believe either A, someone planted $13,000.00 in there or Newsome returned his car to him with thirteen grand of product he's happy to be left there, he just happened to leave it there in the back. That doesn't pass the smell test, that doesn't make any sense whatsoever. Nobody plants $13,000.00 worth of product in their car. Nobody leaves $13,000.00 worth of anything in the car."
 {¶ 71} David did not object to these comments at trial, thus, he has waived all but plain error.[24] Plain error exists only where the results of the trial would have been different without the error.[25]
 {¶ 72} Both of these comments were within the latitude given in closing argument. The assistant prosecutor made these comments relating to David's argument that the drugs were planted in his truck. The comments were fair argument to contradict David's theory.
 {¶ 73} The trial court did not err by permitting these comments, and David was not denied a fair trial as a result of them.
 {¶ 74} The third comment David objects to is:
 {¶ 75} "And lastly keep this in mind about the burn marks on [David's] hands. He gets those burn marks and does not seek medical attention, for what reason. I submit to you and suggest to you that it's because it was as a result of illegal activity and he didn't go [to the hospital] until he had to."
 {¶ 76} David did not object to this comment at trial, so it will also be addressed on a plain error analysis.[26]
 {¶ 77} This comment does not rise to the level of plain error. Special Agent 62 testified that methamphetamine cooks commonly have burns on their hands due to the unstable nature of anhydrous ammonia. David testified that his hands were recently burned and that he did not seek immediate medical attention for his injuries. He claimed the delay was due to his lack of medical insurance. The assistant prosecutor's comment was fair argument based on the evidence. Moreover, we cannot say the results of the trial would have been different without the comment.
 {¶ 78} David's third assignment of error is without merit.
 {¶ 79} The judgment of the trial court is affirmed.
Rice, J., O'Toole, J., concur.
[1] See Miranda v. Arizona (1966), 384 U.S. 436.
[2] Crim.R. 29(A).
[3] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[4] R.C. 2901.22(B).
[5] See R.C. 2925.01(A), R.C. 3719.01(BB), and R.C.3719.41(C)(2).
[6] R.C. 2925.01(D)(1)(g).
[7] State v. Rollins, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 22, citing State v. Haynes (1971), 25 Ohio St.2d 264.
[8] State v. Lee, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, at ¶ 41, citing State v. Wolery (1976), 46 Ohio St.2d 316,329.
[9] State v. Hankerson (1982), 70 Ohio St.2d 87, 91.
[10] State v. Biros (1997), 78 Ohio St.3d 426, 447, quotingState v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
[11] State v. Rollins, 2006-Ohio-1879, at ¶ 22, citing Statev. Jenks, 61 Ohio St.3d at 272-273.
[12] See State v. Cola (1991), 77 Ohio App.3d 448, 451.
[13] Id.
[14] State v. Davis (Sept. 24, 1998), 10th Dist. No. 98AP-192, 1998 Ohio App. LEXIS 4455, at *8.
[15] See State v. Seay, 1st Dist. No. C-040763,2005-Ohio-5964, at ¶ 50.
[16] R.C. 2925.041(B).
[17] Id.
[18] State v. Rollins, 2006-Ohio-1879, at ¶ 27-28.
[19] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[20] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[21] State v. Woodards (1966), 6 Ohio St.2d 14, 26.
[22] State v. Maurer (1984), 15 Ohio St.3d 239, 266.
[23] State v. Scheidel, 11th Dist. No. 2003-A-0087,2006-Ohio-195, at ¶ 35, quoting State v. Kish, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, at ¶ 52.
[24] State v. Green (2000), 90 Ohio St.3d 352, 373, citingState v. Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus.
[25] State v. Issa (2001), 93 Ohio St.3d 49, 56, citingState v. Moreland (1990), 50 Ohio St.3d 58, 62.
[26] State v. Green, supra, citing State v. Wade, supra.