OPINION
{¶ 1} Appellant, Daisy B. Herman, appeals the judgment entered by the Portage County Court of Common Pleas. Herman was sentenced to one year of community control for her conviction for possession of cocaine.
 {¶ 2} On March 10, 2007, Officer Thomas Eskridge of the Ravenna Police Department was on routine patrol. He noticed a vehicle parked on the side of a street with two occupants in it. A third individual left the vehicle and approached a residence, which Officer Eskridge described as a "suspected or alleged drug house or crack *Page 2 
house." Officer Eskridge parked his car down the street and waited for the vehicle to move. A few moments later, the vehicle drove past Officer Eskridge. Officer Eskridge noticed that the vehicle's windshield was cracked and its rear license plate was not properly illuminated. Based on these violations, Officer Eskridge initiated a traffic stop.
 {¶ 3} Officer Eskridge approached the vehicle and asked the driver, Kelly Doolittle, to step out of the car. Doolittle exited the car and talked to Officer Eskridge. During this conversation, Doolittle provided a fictitious name and social security number, since she had outstanding warrants for her arrest and a suspended driver's license. Doolittle informed Officer Eskridge that there were no drugs in the vehicle and gave him permission to search the car. Officer Eskridge placed Doolittle in the back of his patrol car.
 {¶ 4} Next, Officer Eskridge approached Herman, who was seated in the front passenger seat of the suspect vehicle. Officer Eskridge asked Herman if she had been "served up," which is a slang term for a drug transaction. Herman denied purchasing any drugs. However, she acknowledged that she walked up to the house in question. She implied that the individual there did not have anything to sell by showing Officer Eskridge a $20 bill and stating "he didn't have any."
 {¶ 5} Officer Eskridge asked Herman to exit the vehicle. Herman got out of the vehicle carrying her purse and a plate of food. The plate of food was covered in aluminum foil. Officer Eskridge escorted Herman to the back of Doolittle's vehicle and told her to set the plate of food on the trunk of the car. These events were recorded by the dashboard video camera in Officer Eskridge's car. By this time, Officer Lafferty had responded to the scene of the stop to assist Officer Eskridge. Officer Lafferty removed *Page 3 
the aluminum foil cover from the plate and found a plastic bag containing suspected cocaine. Subsequent testing at the Bureau of Criminal Identification and Investigation ("BCI") confirmed the substance was cocaine.
 {¶ 6} Officer Eskridge informed Herman she was under arrest and placed her in handcuffs. Also, he informed Herman of her Miranda rights. Herman stated the plate was not hers. She stated that Doolittle told her to take the plate to the house and make sure she brought it back. When asked by Officer Eskridge if she knew what was in the plate, Herman answered affirmatively.
 {¶ 7} Thereafter, Officer Eskridge removed the third passenger, Will Roy Strong, from the vehicle. No contraband was found on Strong.
 {¶ 8} Herman was arrested and taken into custody. Strong and Doolittle were permitted to leave in the vehicle.
 {¶ 9} Herman was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a) and a fifth-degree felony. Herman pled not guilty to this charge.
 {¶ 10} Herman filed a motion to suppress any oral statements she made on the night of her arrest. After conducting a hearing on the matter, the trial court overruled Herman's motion.
 {¶ 11} A jury trial was held. The state called Officer Eskridge and Kenneth Ross, a laboratory analyst with BCI. In addition, the videotape of Herman's arrest from the dashboard camera was admitted as an exhibit and played for the jury. Following the state's case-in-chief, Herman moved for acquittal pursuant to Crim. R. 29(A). While the trial court did not specifically rule on this motion, we presume the motion was denied. *Page 4 
Herman called Strong as a defense witness. Strong testified that the plate of food was in the vehicle when he and Herman entered and that Doolittle asked Herman to hold the plate on her lap. After the defense rested, Herman renewed her Crim. R. 29(A) motion, which the trial court denied.
 {¶ 12} The jury found Herman guilty of possession of cocaine. The trial court sentenced Herman to one year of community control.
 {¶ 13} Herman raises three assignments of error. Her first assignment of error is:
 {¶ 14} "The prosecutor engaged in misconduct during the closing statement [sic] by improperly arguing facts not in evidence, and thereby deprived the defendant of her right to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
 {¶ 15} Herman contends the assistant prosecutor made improper comments during his closing argument.
 {¶ 16} The assistant prosecutor described the house Herman approached as a "known crack house" on at least three occasions in his closing argument. The assistant prosecutor misrepresented the evidence, in that Officer Eskridge testified the house was a "suspected or alleged drug house or crack house." Thus, the assistant prosecutor should not have referred to the house as a "known crack house."
 {¶ 17} "We note that counsel is to be given latitude during summation. [State v. Woodards (1966), 6 Ohio St.2d 14, 26.] In addition, prosecutorial misconduct will not be a ground for error unless the defendant is denied a fair trial. [State v. Maurer (1984),15 Ohio St.3d 239, 266.]" State v. David, 11th Dist. No. 2005-L-109, 2006-Ohio-3772, at ¶ 66. *Page 5 
 {¶ 18} Moreover, Herman did not object to these comments at trial; thus, she has waived all but plain error. State v. Green (2000),90 Ohio St.3d 352, 373, citing State v. Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus. Plain error exists only where the results of the trial would have been different without the error. State v.Issa (2001), 93 Ohio St.3d 49, 56, citing State v. Moreland (1990),50 Ohio St.3d 58, 62.
 {¶ 19} Instead of formally objecting to the assistant prosecutor's comments, defense counsel chose to point out the misrepresentation during his closing argument. Defense counsel stated:
 {¶ 20} "Now the prosecutor made some inferences here. * * * He wants you to go ahead and assume that this was a crack house. Was there any testimony that it was other than Officer Eskridge saying, well, I had kind of heard it was a crack house.
 {¶ 21} "***
 {¶ 22} "Were there any drug arrests made out of there? Did the prosecutor bring in any evidence to show there was drug activity? No, he got an officer saying there is speculation there was, okay? But there is no proof."
 {¶ 23} Defense counsel continued, stating "there is no evidence here that this is a crack house, absolutely none," and "[s]o we know nothing about this house and you can't draw an inference that it is a drug house because there is nothing in evidence to show that."
 {¶ 24} By making these comments, defense counsel informed the jury of the assistant prosecutor's mischaracterization of the evidence and provided the jury with an alternative summary of the evidence. As such, we cannot say the results of the trial would have been different without this perceived error. *Page 6 
 {¶ 25} Herman's first assignment of error is without merit.
 {¶ 26} Herman's second assignment of error is:
 {¶ 27} "The trial court erred in overruling the defendant's motion for acquittal because the state failed to present sufficient evidence that the defendant knowingly possessed crack cocaine."
 {¶ 28} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 29} Herman was charged with possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a), which provides:
 {¶ 30} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 31} "***
 {¶ 32} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 33} "***
 {¶ 34} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this *Page 7 
section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
 {¶ 35} "(a) Except as otherwise provided ***, possession of cocaine is a felony of the fifth degree[.]"
 {¶ 36} "A person acts knowingly, regardless of his purpose, when [she] is aware that [her] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [she] is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 37} On appeal, Herman does not contest the fact that the substance found on the plate of food was cocaine. Instead, she argues that the state did not prove that she knowingly possessed the cocaine.
 {¶ 38} "Possession of drugs can be either actual or constructive."State v. Rollins, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 22, citingState v. Haynes (1971), 25 Ohio St.2d 264. Even if the contraband is not in a suspect's "immediate physical possession," the suspect may still constructively possess the item, so long as the evidence demonstrates that he or she "was able to exercise dominion and control over the controlled substance." State v. Lee, 11th Dist. No. 2002-T-0168,2004-Ohio-6954, at ¶ 41, citing State v. Wolery (1976),46 Ohio St.2d 316, 329. To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." State v.Hankerson (1982), 70 Ohio St.2d 87, 91.
 {¶ 39} The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'"State v. Biros (1997), 78 Ohio St.3d 426, *Page 8 
447, quoting State v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus. The Third Appellate District has held that constructive possession of contraband may be supported solely by circumstantial evidence. State v. Rollins, 2006-Ohio-1879, at ¶ 22, citing State v.Jenks, 61 Ohio St.3d at 272-273.
 {¶ 40} Herman was in actual physical possession of the cocaine. She exited the vehicle holding the plate of food, wherein the cocaine was concealed.
 {¶ 41} We will now address whether there was sufficient evidence presented that Herman "knowingly" possessed the cocaine. Herman stated to Officer Eskridge that she was told to take the plate of food to the house and to make sure she brought the plate back. When Herman was asked if she knew "it" was in the plate of food, she responded that she knew "it" was in there. This conversation occurred shortly after the officers found the cocaine in the plate of food.
 {¶ 42} Also, at the time of the stop, Herman informed Officer Eskridge that she had attempted to purchase illegal drugs, but her efforts were unsuccessful. In fact, there was cocaine in the plate of food she was holding. The fact that Herman attempted to deceive Officer Eskridge regarding the unsuccessful drug transaction is circumstantial evidence that she knew the cocaine was in the plate of food.
 {¶ 43} The state's evidence, when taken together and viewed most strongly in favor of the prosecution, was sufficient for a rational trier of fact to conclude that Herman knowingly possessed cocaine.
 {¶ 44} Herman's second assignment of error is without merit.
 {¶ 45} Herman's third assignment of error is: *Page 9 
 {¶ 46} "The jury's verdict of guilty was against the manifest weight of the evidence as the state failed to produce evidence sufficient to show that the defendant knowingly possessed crack cocaine."
 {¶ 47} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 48} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 49} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 50} Herman points out that the cocaine could have belonged to Doolittle. She argues that while Doolittle denied possessing any drugs, she also lied to the police by giving Officer Eskridge a fictitious name. The fact that Doolittle lied to Officer Eskridge was presented to the jury. Officer Eskridge testified that Doolittle was charged with *Page 10 
falsification as a result of providing the fictitious information. Thus, the jury was free to consider the possibility that the cocaine could have belonged to Doolittle.
 {¶ 51} Herman argues that Strong's testimony supported her position that she did not know the cocaine was in the plate of food. Strong testified that the plate of food was in the car when he and Herman entered. Further, he testified that Doolittle asked Herman to put the plate on her lap and take the plate to the house. However, Strong was asked the following question on cross-examination:
 {¶ 52} "Q. Isn't what was going on there — and you can agree or disagree with me — is that this is a known crack house and you and Miss Herman and Miss Needham/Doolittle went there with this plate of food as a cover to purchase crack cocaine?
 {¶ 53} "***
 {¶ 54} "Do you agree or disagree with that?
 {¶ 55} "[Strong]: I'm not sure."
 {¶ 56} Thus, while Strong testified that the plate was Doolittle's and that Herman was merely asked to hold it, he responded that he was "not sure" whether Herman used the plate as a cover for purchasing cocaine. Accordingly, the jury could have believed Strong's testimony that the plate of food was already in the car when Herman entered but concluded that Herman knowingly used the plate of food as a prop to conceal the cocaine.
 {¶ 57} In addition, Strong admitted that he was an "acquaintance" of Herman, that he has known her since 2001, and that the two of them "date once in a while." *Page 11 
Thus, the jury could have determined that Strong's testimony was biased due to his relationship with Herman.
 {¶ 58} We do not believe the jury lost its way or created a manifest miscarriage of justice by finding Herman guilty of possession of cocaine.
 {¶ 59} Herman's third assignment of error is without merit.
 {¶ 60} The judgment of the Portage County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., COLLEEN MARY O'TOOLE, J., concur. *Page 1