[Cite as *State v. Parks*, 2012-Ohio-1832.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97049**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# PATRICK PARKS, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545788

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 26, 2012

**ATTORNEY FOR APPELLANT**

David L. Doughten
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, OH   44103


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Adrienne E. Linnick
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Patrick Parks, Jr., appeals his conviction, entered upon a jury's verdict, on three counts of aggravated robbery with gun specifications, one count of petty theft, one count of receiving stolen property, and one count of improperly handling a firearm in a motor vehicle. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

{¶2} The victims, a father, a mother, and their son, were visiting a relative for the holidays in the Cleveland area. On December 29, 2010, the father backed his car into the garage of the relative's home, letting the mother and son out of the car prior to parking. The mother started walking toward the house. The home was built on a corner lot. The garage was detached from the residence, and the garage and its ten-foot-long driveway faced a side street. The son waited for his father, who carried an oxygen tank around at all times, as he struggled with the tank while exiting the vehicle. Once free, the father rested in the driveway from the extra physical exertion. The father was almost halfway down the driveway. The son closed the garage door and waited with his father. The mother was almost to the house, and the father could not see her because the garage obstructed his view.

{¶3} Three men, Parks, Deonte Mims, and Damion Parks (Parks's younger brother), suddenly approached the father and son. Another suspect, Christopher Cliff, remained in a stolen vehicle parked in the street. One of the three men approached the

father and ordered him to open the garage door. He refused, and the first suspect, armed with a .38 revolver and standing six to eight feet from the father, then said, "give me your money." The father again refused, but "unbeknownst" to him, when the suspect demanded money from him, the son handed $22 to the nearest suspect, the unarmed suspect. The son was standing two feet to his father's right.

{¶4} Two of the men were standing in front of the father, and the third man, armed with what appeared to the father to be a semi-automatic handgun, was standing in the back near where the father thought the mother would be standing. According to the father's testimony, the suspect in front of him was six to eight feet away. However, the father also stated that the third suspect was far enough away from the mother to cause the father to think the suspect might miss if he attempted to shoot at the mother. The father, the only member of the family to testify at trial, could not identify the men other than giving a general description of the men and their dark clothing. His focus was on the gun being pointed at him. After the second refusal, either a truck coming down the street or a relative's sudden appearance caused the suspects to flee with only $22 taken from the son.

{¶5} An off-duty police officer, who happened to be driving by, saw a car parked out in front of the relative's home. That car was later identified as the stolen car Parks was driving. The driver's door was open, and the car was running. One person was in the driver's seat, and two other persons were running through the yard to get to the car. The off-duty officer could not see faces, nor could she see if there was a passenger in the

backseat before the two other males entered. She followed the car long enough to relay the license plate to emergency responders, after first verifying that a crime was reported.

{¶6} According to Cliff, Parks, his brother Damion, and Mims picked Cliff up around 9:00 p.m. on the night of the robbery. Parks was driving, and Mims was in the backseat with Cliff. Cliff claimed the three men stopped the car and jumped out around the location of the robbery. In his first statement to police, Cliff said he heard Parks say that he saw two people to rob, but at trial, Cliff claimed he did not remember hearing Parks say anything. Also in his statement to police, Cliff stated that after the robbery, Parks had the revolver and Mims had the BB gun, which resembled a semi-automatic handgun. At trial, Cliff claimed ignorance of that statement as well. The police attempted to pull the car over shortly after the four fled the crime scene; however, the suspects ditched the car and continued on foot. Parks was apprehended "peeking" around the corner of a building not far from where the car was ditched. Parks claimed he was not present but, instead, was at his girlfriend's house until 9:00 p.m. Parks testified that he was on his way to the bus stop when the police stopped him and he just happened to be in the area of the fleeing suspects. Parks's girlfriend testified that he left an hour before the robbery, at approximately 8:00 p.m. Cliff testified that he met up with Parks around 7:30 p.m.

{¶7} Cliff's trial testimony was admittedly shaky. Cliff claims to have been intoxicated when he was arrested and did not remember giving the investigating police

officer two statements. The police officer indicated that Cliff demonstrated no signs of intoxication, and Cliff issued a third statement sometime after the initial arrest.

{¶8} Parks was charged with three counts of aggravated robbery in violation of R.C. 2911.01(A)(1), each with a corresponding firearm specification and the father, son, and mother being the victim of each respective count; petty theft in violation of R.C. 2913.02(A)(4); improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B); and receiving stolen property in violation of R.C. 2913.51. The case proceeded to a jury trial, and Parks was found guilty on all counts, including the firearm specifications. After merging the allied offenses, the trial court sentenced Parks to an aggregate sentence of eight years. Parks timely appealed his conviction.

{¶9} Parks's first assignment of error provides as follows: "The evidence is insufficient to sustain a conviction of aggravated robbery, R.C. 2911.01 against [the mother], count three of the indictment." Parks essentially argues that the mother was a bystander to the robbery of her husband and son, and therefore, there was insufficient evidence to support the allegations of a robbery committed against her. Parks's argument has merit.

{¶10} When an appellate court reviews a claim of insufficient evidence,

"the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶11} Parks was charged with aggravated robbery, a violation of R.C. 2911.01(A)(1), which provides in pertinent part that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." "Theft offense" is defined as any violation of several other crimes specifically enumerated in R.C. 2913.01(K). The indictment alleged that Parks attempted or committed a theft in violation of R.C. 2913.02. The elements of theft, to be distinguished from a "theft offense," are as follows:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services (1) [w]ithout the consent of the owner or person authorized to give consent; (2) [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) [b]y deception; (4) [b]y threat; or (5) [b]y intimidation. R.C. 2913.02(A)(1)-(4).

{¶12} The aggravated robbery count for theft upon the mother is therefore predicated on the attempt to commit the crime of theft. In order to establish a prima facie case for robbery with the mother being the victim, the state must establish that the defendant attempted a theft against the mother. R.C. 2923.02(A) defines attempt as "conduct that, if successful, would constitute or result in the offense." In order to demonstrate attempt, the state must establish facts constituting "a substantial step in a course of conduct planned to culminate in [the actor's] commission of the crime" but that

falls short of completion of the crime. *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, at ¶ 101, citing *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus.

{¶13} In other words, in order to demonstrate that Parks committed aggravated robbery as indicted, the state needed to prove beyond a reasonable doubt that Parks, (1) with the purpose to deprive the mother of property, knowingly obtained or exerted control over some property, or attempted the same, (2) through one of the five enumerated means, and (3) either displayed, brandished, or indicated possession of a weapon during the attempt, commission, or flight from acts underlying the charges.

{¶14} Parks argues that there is no evidence that a theft was attempted or committed upon the mother. Nothing was taken or requested from her. One of the three suspects pointed a gun at the mother; however, only the suspect directly in front of the father made demands.

{¶15} In a similar case, involving a defendant with two counts of aggravated robbery, the fact that a bystander interrupted a robbery was insufficient to sustain a separate conviction for robbery against the bystander. *State v. Rojas*, 3d Dist. No. 2-03-07, 2003-Ohio-5118. The defendant, with a drawn handgun, entered the bathroom of a rest stop along the interstate and demanded money from a victim. A janitor emerged from the utility closet in the restroom. The defendant turned his attention, and gun, toward the janitor and ordered the janitor to return to the closet. The two counts of robbery were for "theft offenses" committed against the victim and the janitor,

respectively. The court reversed the conviction for aggravated robbery against the janitor because there was no crime of theft committed or attempted against him and the theft offense against the victim was not a sufficient predicate theft offense to sustain the aggravated robbery conviction against the janitor. *Id.* at ¶ 11. The robbery conviction against the victim was unscathed. *Id.*

{¶16} In this case, the state argues that the mother was present during the robbery of the family, and therefore, she was subject to the demands being made against the father. Admittedly, this fact distinguishes the facts from *Rojas*, because in *Rojas*, the bystander stumbled onto the robbery in progress. In this case, the mother was arguably present from the beginning. However, that fact is a distinction without a difference. Whether the bystander stumbled onto the scene is but one factor to consider. We must also consider the bystander's proximity to the robbery, the actions of the suspects, and whether the bystander felt compelled to part with property based on the demands.

{¶17} While certainly some offense was committed against the mother, we cannot conclude that it was a robbery, relying on the father's testimony alone. We cannot infer from the facts of this case that because one of the suspects demanded money from the father, that everyone in the vicinity — an ambiguous term at best considering neither party established how far the mother was away from the garage — was also subject to the demand. From the father's account, it is not clear he could even see the mother from his vantage point, although his later testimony that the third suspect pointed a gun at her implies he could. Beyond that, the facts are clear that the mother was well behind the

suspect demanding money and far enough away from the third suspect to cause the father to doubt the suspect could accurately target the mother. In other words, the suspect may not have been close enough to even take something from the mother. Further, there is no evidence that the third suspect said or did anything to suggest the mother's compliance with the leader's demand was necessary. By all accounts, the third suspect and the mother just stood still during the duration of the incident.

{¶18} Even if we consider the inference that the suspects approached the three victims with the intent to rob all three, preparation and intent alone do not constitute attempt. *State v. Scott*, 8th Dist. No. 83477, 2004-Ohio-4631, ¶ 12, citing *State v. Woods*, 48 Ohio St.2d at 131, 357 N.E.2d 1059 (1976). In *Scott*, the defendant declared the intent to steal a jacket from the victim, but upon approaching the victim, the defendant just shot and killed him without any attempt to take anything. This court reversed the aggravated robbery conviction on the basis there was no attempted theft established. *Id.*

{¶19} The same rationale must be applied to the facts of this case. The third suspect was not in a position to take anything from the mother, nor did he enforce compliance with the leader's demands. The interruption of the crime did not occur until after the second refusal and after the son handed the money to the suspects. The third suspect took no actions to attempt a theft against the mother. As in *Woods*, intent without action is insufficient to constitute a substantial step toward the commission of the crime.

**{¶20}** Accordingly, the state presented no evidence that a theft offense was committed or attempted against the mother, and there is insufficient evidence to support the separate aggravated robbery conviction predicated upon such. Parks's first assignment of error is sustained.

**{¶21}** Parks's second assignment of error provides: "The verdicts are against the manifest weight of the evidence." Parks's entire argument attacks the credibility of Cliff, who received a favorable plea deal in exchange for his testimony and exhibited many gaps in memory while testifying at trial. Cliff was the only witness to identify Parks as being one of the perpetrators. Parks further argued that because his girlfriend did not provide an alibi to the crime, stating that Parks left her house at 8:00 p.m., that Parks must be telling the truth. Parks's arguments are without merit.

**{¶22}** In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. Under this de novo review, we examine the record, weigh the evidence and all reasonable inferences therein, and "determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

**{¶23}** Despite Parks's claims to the contrary, Cliff's testimony does not altogether conflict with the testimony of Parks's girlfriend; it only conflicts with Parks's testimony. Cliff claimed he first met with Parks at 7:30 p.m. on the evening in question, while

Parks's girlfriend claimed Parks left her home around 8:00 p.m. Parks stated he left around 9:00 p.m. All three's recollection of time was within the same time frame, and the discrepancies go to the credibility of each witness. The recollection of the time by Parks's girlfriend more closely resembled Cliff's recollection. The jury was free to deem Parks's testimony incredible in consideration of this fact.

{¶24} Further, Cliff's "gaps" in his memory occurred when the state asked about the statements he gave to police on the night of the robbery. Cliff claims to have been intoxicated, but the officer testified Cliff exhibited no signs of inebriation. The state played Cliff's recorded statement to the jury when Cliff was unable to remember what he told the officers. Cliff, on cross-examination, did remember giving two statements to the police that were largely consistent. Parks inquired into a third statement given by Cliff that contradicted the first two; however, the record does not contain any inconsistent statements purportedly contained in the third statement. None of Cliff's so-called gaps in memory affected the trial other than giving the jury grounds to discredit Cliff's testimony. The "gaps" were filled in by the statements made to the police on the night of the robbery, and Parks explored Cliff's third statement that supposedly contradicted the first two. Upon a thorough review of the record, we find the jury did not clearly lose its way and create a manifest miscarriage of justice. Parks's second assignment of error is overruled.

{¶25} Parks's conviction on Count 3, the aggravated robbery committed against the mother, is reversed. All other claims are overruled, and the remainder of his conviction is affirmed.

{¶26} Parks's conviction is affirmed in part, reversed in part, and this cause is remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., DISSENTS