[Cite as *State v. Campbell*, 2014-Ohio-972.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2013-A-0047** |
| - vs - | : | |
| JUDD W. CAMPBELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 647.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Rebecca Hall*, P.O. Box 242, 34 South Chestnut Street, Suite 300, Jefferson, OH 44047 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Judd W. Campbell, appeals from the July 31, 2013 judgment of the Ashtabula County Court of Common Pleas, sentencing him to five years in prison for illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and endangering children following a jury trial.

**{¶2}** On October 18, 2012, appellant was indicted by the Ashtabula County Grand Jury on four counts: count one, illegal manufacture of drugs, a felony of the first degree, in violation of R.C. 2925.04(A); count two, illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the second degree, in violation of R.C. 2925.041(A); count three, aggravated possession of drugs, a felony of the third degree, in violation of R.C. 2925.11(A); and count four, endangering children, a felony of the third degree, in violation of R.C. 2919.22(B)(6). Appellant pleaded not guilty to all charges.

**{¶3}** A jury trial commenced on June 5, 2013. At trial, nine witnesses testified for appellee, the state of Ohio. It was established that on August 29, 2012, members of a special task force, which involved a number of police agencies, executed arrest warrants in the Ashtabula County area related to a methamphetamine investigation. On that date, an arrest warrant was executed for Amanda Olsen at her home, located at 503 East Main Street in Orwell, Ashtabula County, Ohio. A group of officers arrived at Amanda's residence.

**{¶4}** Deputy Jay Thomas with the Ashtabula County Sheriff's Department ("ACSD") testified that after knocking on the back door several times, Amanda, who was wearing only underwear and a small top, opened the door, walked onto a porch, closed the door behind her, and was arrested. Amanda requested adequate clothing from inside and indicated that her young child and Judd Campbell, Jr. (appellant's son) were in the home.

**{¶5}** Amanda's mother, Kathryn Olsen, testified that Amanda lived at the residence with her four-year-old daughter, appellant, and Judd Campbell, Jr. Kathryn

2

said that her granddaughter slept in a front bedroom with yellow floral wallpaper which overlooked Main Street. Kathryn also stated that Amanda shared a back bedroom with appellant.

{¶6} In order to retrieve adequate clothing for Amanda, Deputy Thomas knocked on the door. As soon as Judd Campbell, Jr. opened the door, Deputy Thomas smelled a strong odor of ammonia gas which is associated with methamphetamine production. Upon entering the residence, Deputy Thomas encountered appellant in the living room. Deputy Thomas went upstairs to try to locate Amanda's child. He indicated the odor was more prevalent in that area. At the top of the stairs was a bedroom that contained methamphetamine labs and other items used in the manufacture of methamphetamine.

{¶7} When Deputy Steve Murphy with the ACSD entered Amanda's residence, he detected an odor of ammonia gas and observed appellant near the stairs. Deputy Murphy went upstairs and saw Amanda's young daughter in a south bedroom. He carried the child downstairs. Chief Chad Fernandez with the Orwell Village Police Department ("OVPD") testified that the child's bedroom was less than 100 feet away from the methamphetamine labs.

{¶8} Sergeant William Roskos with the OVPD contained the perimeter at the back of Amanda's residence. He observed appellant and Judd Campbell, Jr. looking out of an upstairs window after Amanda was arrested. Sergeant Roskos explained that the window was in a room where a methamphetamine lab was located. Patrolman Greg Lachey with the Roaming Shores Police Department ("RSPD") also observed someone peering out of the upstairs bedroom window.

3

{¶9} Sergeant Thomas Dispenses with the RSPD watched the front of Amanda's home. Appellant and Judd Campbell, Jr. were later secured in the back of Sergeant Dispenses' cruiser. Sergeant Dispenses observed the two men conversing but could not hear what they were saying.

{¶10} Patrolman Anthony Wood with the Jefferson Village Police Department testified that he went to Amanda's residence to neutralize the methamphetamine labs. He removed two one-pot meth labs from an upstairs bedroom. Patrolman Wood also disposed of several gas generators. He said that one of the generators was still giving off gas, indicating that it had just been used.

{¶11} Finally, Keith Taggart, a forensic drug chemist with the Ohio Attorney General's Office, Bureau of Criminal Identification and Investigation, testified that he tested the evidence at issue. State's Exhibit 31A was found to be 8.6 grams of methamphetamine; state's Exhibit 32A was found to be 13.8 grams of methamphetamine; and state's Exhibits 9A and 9B were found to be pseudoephedrine.

{¶12} At the close of the state's case, defense counsel moved for a Crim.R. 29 judgment of acquittal. The trial court denied the motion.

{¶13} Defense counsel called two witnesses. Judd Campbell, Jr. testified that he spent the night at Amanda's residence on August 29, 2012 in an upstairs bedroom. He indicated that appellant also spent the night downstairs at Amanda's house. Judd Campbell, Jr. stated that he brought ingredients to manufacture methamphetamine with him to Amanda's home and said the labs were his. He claimed that no one knew he was making methamphetamine.

4

{¶14} Appellant testified that he spent the night at Amanda's house on the date at issue. Appellant said that he and Amanda slept downstairs that night. He claimed that the methamphetamine labs were not in Amanda's bedroom. According to appellant, he never cooked methamphetamine, was not familiar with the odor, and did not give his son permission to manufacture methamphetamine in Amanda's home.

{¶15} Thereafter, the trial judge instructed the jury on the law, both sides gave closing arguments, and the case was submitted to the jury.

{¶16} Following trial, the jury returned a guilty verdict on each count of the indictment. The trial court accepted the verdict, deferred sentencing, and referred the matter to the Adult Probation Department for a pre-sentence investigation and report.

{¶17} Appellant was sentenced on July 31, 2013. The trial court found that all counts were allied offenses of similar import. The court sentenced appellant to five years in prison on count one, of which four years is mandatory, with 54 days of credit for time already served. The court merged counts two, three, and four with count one for purposes of sentencing. The court further notified appellant that he is subject to five years of post-release control. Appellant filed a timely appeal and asserts the following three assignments of error:

{¶18} "[1.] There was insufficient evidence presented to sustain a conviction for the charges of illegal manufacturing of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs and child endangering in violation of defendant-appellant's Fifth, Six[th] and Fourteenth Amendment rights.

**{¶19}** "[2.] The trial court erred to the prejudice of defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

**{¶20}** "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶21}** Preliminarily, we note that appellant does not take issue with his sentence. Rather, appellant's appeal centers around issues related to his trial. Appellant's three assignments of error focus on sufficiency and manifest weight of the evidence.

**{¶22}** With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Ohio Supreme Court established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

**{¶23}** As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

**{¶24}** "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

**{¶25}** ""The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to

the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*'"

{¶26} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

{¶27} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶28} With regard to manifest weight, this court stated in *Schlee, supra*, at *14-15:

{¶29} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶30} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)

{¶31} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶32} With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶33} In his first assignment of error, appellant argues there was insufficient evidence presented to sustain a conviction for the charges of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and endangering children.

{¶34} In his second assignment of error, appellant contends the trial court erred in denying his Crim.R. 29(A) motion for acquittal.

{¶35} Because appellant's first and second assignments of error are interrelated, we will address them together.

{¶36} Appellant was indicted on four counts. In count one, appellant was charged with illegal manufacture of drugs in violation of R.C. 2925.04(A) which states: "[n]o person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

{¶37} In count two, appellant was charged with illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A) which states: "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶38} In count three, appellant was charged with aggravated possession of drugs in violation of R.C. 2925.11(A) which states: "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶39} Lastly, in count four, appellant was charged with endangering children in violation of R.C. 2919.22(B)(6) which states:

{¶40} "(B) No person shall do any of the following to a child under eighteen years of age * * *:

{¶41} "(6) Allow the child to be on the same parcel of real property and within one hundred feet of * * * any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any

9

person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division."

**{¶42}** Appellant asserts that the state failed to establish either actual or constructive possession. Based on the facts presented, we disagree.

**{¶43}** In *State v. Herman*, 11th Dist. Portage No. 2008-P-0067, 2009-Ohio-1318, ¶38-39, this court stated:

**{¶44}** "'Possession of drugs can be either actual or constructive.' *State v. Rollins*, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶22, citing *State v. Haynes* (1971), 25 Ohio St.2d 264, * * *. Even if the contraband is not in a suspect's 'immediate physical possession,' the suspect may still constructively possess the item, so long as the evidence demonstrates that he or she 'was able to exercise dominion and control over the controlled substance.' *State v. Lee*, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, at ¶41, citing *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, * * *. To prove constructive possession, '(i)t must also be shown that the person was conscious of the presence of the object.' *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, * * *.

**{¶45}** "The Supreme Court of Ohio has held that '"circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."' *State v. Biros* (1997), 78 Ohio St.3d 426, 447, * * *, quoting *State v. Jenks*, 61 Ohio St.3d 259, * * *, paragraph one of the syllabus. The Third Appellate District has held that constructive possession of contraband may be supported solely by circumstantial evidence. *State v. Rollins*, 2006-Ohio-1879, at ¶22, citing *State v. Jenks*, 61 Ohio St.3d at 272-273." (Parallel citations omitted.)

10

{¶46} In this case, the state was able to prove that appellant committed the charged offenses. As stated, on August 29, 2012, members of a special task force executed arrest warrants in the Ashtabula County area related to a methamphetamine investigation. On that date, an arrest warrant was executed for Amanda at her residence. Deputy Thomas testified that after knocking on the back door several times, Amanda, who was wearing only underwear and a small top, opened the door, walked onto a porch, closed the door behind her, and was arrested. Amanda requested adequate clothing from inside and indicated that her young child and Judd Campbell, Jr. were in the home.

{¶47} Amanda's mother, Kathryn, testified that Amanda lived with her four-year-old daughter, appellant, and Judd Campbell, Jr. Kathryn said that her granddaughter slept in a front bedroom with yellow floral wallpaper which overlooked Main Street. Kathryn also stated that Amanda shared a back bedroom with appellant.

{¶48} Deputy Thomas knocked on the door so that Amanda could retrieve adequate clothing. As soon as Judd Campbell, Jr. opened the door, Deputy Thomas smelled a strong odor of ammonia gas which is associated with methamphetamine production. Upon entering the residence, Deputy Thomas encountered appellant in the living room. Deputy Thomas went upstairs to try to locate Amanda's child. He indicated the odor was more prevalent in that area. At the top of the stairs was a bedroom that contained methamphetamine labs and other items used in the manufacture of methamphetamine.

{¶49} When Deputy Murphy entered Amanda's residence, he detected an odor of ammonia gas and observed appellant near the stairs. Deputy Murphy went upstairs

11

and saw Amanda's young daughter in a south bedroom. He carried the child downstairs. Chief Fernandez testified that the child's bedroom was less than 100 feet away from the methamphetamine labs.

{¶50} Sergeant Roskos contained the perimeter at the back of Amanda's residence. He observed appellant and Judd Campbell, Jr. looking out of an upstairs bedroom window after Amanda was arrested. Sergeant Roskos explained that the window was in a room where a methamphetamine lab was located. Patrolman Lachey also observed someone peering out of the upstairs bedroom window.

{¶51} Patrolman Wood testified that he went to Amanda's residence to neutralize the methamphetamine labs. He removed two one-pot meth labs from an upstairs bedroom. Patrolman Wood also disposed of several gas generators. He said that one of the generators was still giving off gas, indicating that it had just been used.

{¶52} Lastly, forensic drug chemist Keith Taggart testified that he tested the evidence at issue. State's Exhibit 31A was found to be 8.6 grams of methamphetamine; state's Exhibit 32A was found to be 13.8 grams of methamphetamine; and state's Exhibits 9A and 9B were found to be pseudoephedrine.

{¶53} Pursuant to *Schlee, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and endangering children were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶54} Appellant's first and second assignments of error are without merit.

{¶55} In his third assignment of error, appellant alleges the trial court erred in returning a guilty verdict against the manifest weight of the evidence.

{¶56} Here, the jury chose to believe the state's witnesses. *DeHass, supra,* at paragraph one of the syllabus. Based on the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and endangering children. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶57} Appellant's third assignment of error is without merit.

{¶58} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed. The court finds there were reasonable grounds for this appeal.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.