[Cite as *State v. Carver*, 2014-Ohio-5767.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0074** |
| MICHAEL A. CARVER, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2012 CR 0395.

Judgment: Affirmed in part, and remanded in part.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Gregory A. Price,* 137 South Main, Suite 300, Akron, OH 44308 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Michael A. Carver, Jr., appeals from the judgment entry of the Portage County Court of Common Pleas sentencing him to ten years imprisonment following his conviction, at jury trial, on two counts of aggravated robbery. Mr. Carver contends that both convictions are against the manifest weight of the evidence, and that one is based on insufficient evidence. The charges stemmed from a robbery occurring at a Circle K store in Kent, Ohio, during the early hours of April 7, 2012, where the perpetrator stole

the cell phones of the two store clerks at knife point. We affirm in part, and remand in part.

{¶2} June 20, 2012, the Portage County Grand Jury returned an indictment in two counts against Mr. Carver, each for aggravated robbery in violation of R.C. 2911.01(A)(1), felonies of the first degree. Mr. Carver was arraigned September 24, 2012, and pleaded not guilty to both charges. Discovery practice ensued. Jury trial began May 7, 2013. Jury deliberations commenced May 9, 2013. May 10, 2013, the jury informed the trial court it was unable to reach a verdict, whereupon the trial court declared a mistrial, and discharged the jury.

{¶3} A new trial began June 25, 2013. The following facts are taken from the trial transcript.

{¶4} April 7, 2012, Deborah Bartels and Paige Chadima were working the third shift at the Circle K store on North Mantua Street in Kent, Ohio. About 3:30 a.m., Ms. Bartels was behind the counter, while Ms. Chadima restocked the cooler in the back of the store. A man dressed in a red Ohio State University hoodie, with the hood pulled down over his face, and a baseball cap, entered the store, holding a knife. He quickly went behind the counter, telling Ms. Bartels not to do anything stupid, then seized Ms. Bartels' and Ms. Chadima's cell phones, which were on the counter, and fled. Ms. Chadima spotted the man behind the counter, but panicked when Ms. Bartels screamed for help, and ran back to the cooler to hide. Ms. Chadima did not testify she saw the knife. Ms. Bartels called the police from the store phone. At trial, she identified a knife recovered by the police from Mr. Carver's former fiancée as being similar to that used by the robber, having serrations at the base of the blade, with the rest of the blade being

2

smooth. She also identified a red hoodie introduced into evidence as being similar to that worn by the robber.

{¶5} Ms. Bartels was shown two photo arrays April 7, 2012. She could not identify anyone in the first array as the robber. She picked out a photo from the second array, stating she was 70% sure it was the robber. The photo was not of Mr. Carver. A few days later, police showed Ms. Bartels a third photo array, including a photo of Mr. Carver. She picked the subject of a different photo as the suspect, stating she was 90% sure on that occasion.

{¶6} Officer Martin Gilliland, a K-9 handler with the City of Kent Police Department, was first on the scene. Officer Gilliland briefly spoke with the two clerks, then had Ms. Bartels call the store manager, so he could view the security video. Officer Gilliland tried to track the suspect with his dog, which briefly lighted on a scent. However, the dog lost the scent near Burns Court, an alley near the Circle K.

{¶7} Sergeant James Campbell of the Kent State University Police also responded to the crime scene. While driving down Burns Court, he spotted a red OSU hoodie, and reported the fact. Officer James Ennemoser, another K-9 handler with the City of Kent Police Department, quickly arrived, but his dog could not pick up any scent. Officer Ennemoser took possession of the red hoodie, turning it over to Officer Gilliland.

{¶8} Bradley Barkhurst is a forensic analyst with the Ohio Organized Crime Investigations Commission, part of the Ohio Attorney General's office. He specializes in working with audio and visual evidence, and was employed in this investigation to enhance the images and audio from the Circle K surveillance video. He had little success. Mr. Carver has a tattoo of barbed wire on his right wrist, and wears a bracelet

3

there. The suspect in the surveillance video had some marking on his right wrist, and a bracelet, but Mr. Barkhurst refused to testify they were the same as Mr. Carver's. He testified the hoodie in evidence, and that depicted in the surveillance video, were similar, but admitted there appeared to be differences.

{¶9} Catherine Dotts was Mr. Carver's fiancée at the time of the robbery. The couple lived with a woman named Twyla in Barberton, Ohio. Ms. Dotts kept all of her personal possessions in a duffel bag. Among those possessions were a red OSU hoodie, and a knife, she had inherited from her father, who died in late 2011. The duffel bag disappeared about April 2 or 3, 2012, shortly before the robbery. Ms. Dotts testified at trial the red hoodie placed in evidence was hers: she could recognize it because a draw string was missing, and the lettering damaged from washing.

{¶10} Ms. Dotts testified that Mr. Carver gave her his backpack, filled with his personal belongings, just before his arrest on or about April 10, 2012. In his backpack, she was surprised to find her father's knife, which had gone missing with her duffel bag. Eventually, she gave the knife to police. This was the knife introduced into evidence at trial as the weapon used by the robber.

{¶11} The surveillance video from the Circle K showed the robber wearing black Air Jordan tennis shoes. Ms. Dotts testified she gave Mr. Carver a pair shortly before the robbery. Further, the video revealed, and the clerk Deborah Bartels testified, the robber had a trimmed goatee. Ms. Dotts testified Mr. Carver always wore a well-trimmed goatee, but shaved it just before his arrest. Ms. Dotts also testified Mr. Carver was in the habit of obtaining cell phones, and selling them at a store in Ravenna, Ohio.

4

**{¶12}** Ms. Dotts also testified Mr. Carver always wore a black baseball cap. The robber's cap was tan. The parties stipulated Mr. Carver also wore a grey baseball cap.

**{¶13}** Brenda Gerardi is a supervisor in the DNA unit of the Ohio Bureau of Criminal Identification and Investigation ("BCI"). Before reaching this position in September 2012, she spent 16 years as a forensic scientist in the BCI's forensic biology DNA section. She analyzed the hoodie recovered near the Circle K the night of the robbery. She testified she found a mixture of DNA on the hoodie, and that Mr. Carver could not be excluded as a contributor to the DNA found. She testified there was DNA from at least one other individual on the hoodie, consistent with Catherine Dotts' DNA. She concluded the DNA mixture would only match one in every 2,650,000 unrelated individuals. She further testified there was "extraneous" DNA on the hoodie, possibly contributed by a third individual.

**{¶14}** The jury commenced deliberations June 26, 2013, returning verdicts of guilty on each count June 27, 2013. Sentencing hearing was held July 29, 2013; the trial court filed its judgment entry of sentence August 5, 2013, merging the two counts for sentencing purposes. This appeal timely ensued, Mr. Carver assigning two errors. The first reads: "The trial court's decision to find the accused guilty of aggravated robbery is against the manifest weight of the evidence." In support of this assignment of error, Mr. Carver points to the fact that neither of the store clerks could identify him as the man who robbed the Circle K and that Deborah Bartels picked photos of different men as the perpetrators out of the various photo arrays presented her. He notes that Ms. Dotts could not identify the robber as being him from the surveillance video, nor could Mr. Barkhurst, the state's visual and audio expert.

5

{¶15} "'"(M)anifest weight" requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶16} "'"In determining whether the verdict was against the manifest weight of the evidence, '(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) (* * *)' (Emphasis sic.)

{¶17} "A judgment of a trial court should be reversed as being against the manifest weight of the evidence '"only in the exceptional case in which the evidence weighs heavily against the conviction."' *State v. Thompkins*, 78 Ohio St. 3d 380, 387, * * * (1997).

{¶18} "With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St. 2d 230, * * * paragraph one of the syllabus (1967)." (Parallel citations omitted.) *State v. Campbell*, 11th Dist. Ashtabula No. 2013-A-0047, 2014-Ohio-972, ¶29-32, quoting *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994).

{¶19} The frailties in the state's evidence pointed out by Mr. Carver exist. However, he ignores the vital DNA evidence, putting his and Ms. Dotts' DNA on the red hoodie found near the crime scene. He ignores the fact Ms. Bartels testified the knife introduced into evidence looked like the knife used by the robber, and that Ms. Dotts

found that knife in his backpack, and identified it as her father's knife which had disappeared. He ignores Ms. Dotts' identification of the hoodie as belonging to her. Given this evidence, we cannot find the jury lost its way.

{¶20} The first assignment of error lacks merit.

{¶21} The second assignment of error reads: "The trial court erred in finding Mr. Carver guilty of two counts of aggravated robbery as there was insufficient evidence to warrant a conviction for aggravated robbery against the second clerk." In support of this assignment of error, Mr. Carver argues the state failed to introduce evidence that any robbery was committed against Paige Chadima, the clerk who was stocking the cooler at the Circle K.

{¶22} In this case, the trial court determined "that Counts One and Two merge for sentencing purposes." Once the trial court merged the two counts of aggravated robbery, the trial court should have requested that the state elect on which count to proceed with sentencing. The trial court then accepts the state's choice and merges the two findings of guilt into a single conviction. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶24, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶41. It is only after the trial court completes this analysis that a defendant is actually convicted.

{¶23} On review, this court is unable to determine on which count the sentence was imposed. The Supreme Court of Ohio has held that the proper remedy in a similar situation was to remand the case for the state to elect the count on which the appellant should be sentenced. *State v. Whitfield*, *supra*, ¶22. This remedy is important here, because in the event the state elects to proceed on Count 1, it will not be necessary for this court to address the conviction on Count 2, as it will have merged into Count 1.

7

**{¶24}** The judgment of the Portage County Court of Common Pleas is affirmed in part, and this matter is remanded for resentencing in accordance with this opinion.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

**{¶25}** I concur with the majority's disposition for the first assignment of error and dissent with respect to the second assignment of error.

**{¶26}** Carver was convicted of two counts of Aggravated Robbery, based on there being two victims of the Circle K robbery: Ms. Bartels and Ms. Chadima. The trial court merged the two counts for the purposes of sentencing.

**{¶27}** Under the second assignment of error, Carver argues that there was insufficient evidence "that a theft offense was attempted or committed upon the second clerk [Ms. Chadima]." Appellant's brief at 5.

**{¶28}** The majority reverses Carver's sentence on the grounds that it "is unable to determine on which count the sentence was imposed," and remands "for the state to elect the count on which the appellant should be sentenced." The majority reasons that the State's election is "important * * * because in the event the state elects to proceed

8

on Count 1 (Bartels), it will not be necessary for this court to address the conviction on Count 2 (Chadima), as it will have merged into Count 1." *Supra* at ¶23. I disagree.

{¶29} As an initial matter, neither Carver nor the State has challenged or otherwise taken issue with the lower court's sentencing judgment. It is not appropriate for this court, sua sponte, to reverse Carver's sentence in order to avoid addressing the merits of the second assignment of error.

{¶30} As a substantive matter, the State's election of charges will not render the sufficiency issue moot.

{¶31} The Ohio Supreme Court has held: "In cases in which the imposition of multiple punishments is at issue, R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 18. Stated otherwise: "Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. Thus, the trial court should not vacate or dismiss the guilt determination." *Id.* at ¶ 27.

{¶32} Given the Ohio Supreme Court's position in *Whitfield*, "a defendant is prejudiced by a determination that he is guilty of a felony offense even when a sentence or other penalty is not imposed as a result of that determination." *State v. Jones*, 12th Dist. Warren No. CA2011-05-044, 2012-Ohio-1480, ¶ 37.

{¶33} With respect to the merits of Carver's argument under the second assignment of error, there was sufficient evidence to convict him for the second

9

Aggravated Robbery count, irrespective of whether Chadima saw the knife or whether Carver brandished it before her. The essential elements are that the offender "[h]ave a deadly weapon" and that he "either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1). In the present case, Carver **used** a knife to commit the offense. This is all that the statute requires. Chadima did not need to see the knife, nor did Carver have to specifically indicate to her that he possessed it.

{¶34} While the Ohio Supreme Court has never addressed this precise issue, it has considered the Aggravated Robbery statute in other contexts. The statements of the Ohio Supreme Court reinforce the plain language of the statute that the gravamen of the crime is the elevated risk of harm to the victim inherent in the use of a deadly weapon, not the psychological effect that its use has upon the victim. *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, ¶ 24 ("[a] defendant's brandishing or displaying a deadly weapon elevates the risk to others in the vicinity of the robbery above the risk posed only by the possession or control of the deadly weapon").

{¶35} Carver's conviction under Count 2 of the Indictment is also consistent with the case of *State v. Parks*, 8th Dist. Cuyahoga No. 97049, 2012-Ohio-1832, relied upon by Carver. In *Parks*, the offenders confronted a father, mother, and their son. They demanded money from the father, took money from the son, but only held a gun at the mother (who was standing at a distance from the husband and son). *Id.* at ¶ 14. The court of appeals reversed the Aggravated Robbery conviction with respect to the mother on the grounds that there was insufficient evidence "that a theft offense was committed or attempted against the mother." *Id.* at ¶ 20. The court took into consideration "the

10

bystander's proximity to the robbery, the actions of the suspects, and whether the bystander felt compelled to part with property based on the demands." *Id.* at ¶ 16.

{¶36} In the present case, a theft offense was committed with respect to Chadima and Bartels. Chadima saw Carver behind the counter, heard Bartels scream, and decided to hide in the cooler while Carver took both their cell phones from the counter. In committing the crime, Carver brandished and used a knife. The fact that one victim saw the knife and the other did not is irrelevant as to whether the crime of Aggravated Robbery was committed against them.

{¶37} For the foregoing reasons, the judgment of the lower court should be affirmed. I respectfully dissent.