[Cite as *State v. Carver*, 2016-Ohio-4735.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-P-0074** |
| MICHAEL A. CARVER, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2012 CR 0395.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266  (For Plaintiff-Appellee).

*Gregory A. Price,* 159 South Main Street, Suite 910, Akron, OH  44308 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1}   Michael A. Carver, Jr., appeals from the judgment entry of the Portage County Court of Common Pleas, sentencing him to ten years imprisonment for aggravated robbery.  Mr. Carver contends his conviction is against the manifest weight of the evidence.  Finding no error, we affirm.

{¶2}   This is Mr. Carver's second appeal in this case.  *See, e.g., State v. Carver*, 11th Dist. Portage No. 2013-P-0074, 2014-Ohio-5767 ("*Carver* I").  Mr. Carver

was indicted on two counts of aggravated robbery for a robbery occurring April 7, 2012, at a Circle K store in Kent, Ohio. *Id.* at ¶2-4. He was convicted on both counts. *Id.* at ¶14. He appealed, challenging both the manifest weight and the sufficiency of the evidence. *Id.* at ¶14, 21. We found the convictions were not against the manifest weight of the evidence. *Id.* at ¶19. However, we remanded, since the trial court had found the counts to be allied offenses of similar import, and the state had never elected on which count to proceed. *Id.* at ¶22-24. Mr. Carver sought to appeal to the Supreme Court of Ohio, which denied leave. *State v. Carver*, 143 Ohio St.3d 1418, 2015-Ohio-2911. On remand, the state chose to proceed on count one. By a judgment entry filed October 7, 2015, the trial court again sentenced Mr. Carver to ten years imprisonment.

{¶3} Mr. Carver timely noticed this appeal, assigning a single error: "The trial court's decision to find the accused guilty of aggravated robbery is against the manifest weight of the evidence."

{¶4} We note this assignment of error tracks the first assignment of error made in *Carver* I. Regarding it, we held, at ¶4-19:

{¶5} "April 7, 2012, Deborah Bartels and Paige Chadima were working the third shift at the Circle K store on North Mantua Street in Kent, Ohio. About 3:30 a.m., Ms. Bartels was behind the counter, while Ms. Chadima restocked the cooler in the back of the store. A man dressed in a red Ohio State University hoodie, with the hood pulled down over his face, and a baseball cap, entered the store, holding a knife. He quickly went behind the counter, telling Ms. Bartels not to do anything stupid, then seized Ms. Bartels' and Ms. Chadima's cell phones, which were on the counter, and fled. Ms. Chadima spotted the man behind the counter, but panicked when Ms. Bartels screamed

2

for help, and ran back to the cooler to hide. Ms. Chadima did not testify she saw the knife. Ms. Bartels called the police from the store phone. At trial, she identified a knife recovered by the police from Mr. Carver's former fiancée as being similar to that used by the robber, having serrations at the base of the blade, with the rest of the blade being smooth. She also identified a red hoodie introduced into evidence as being similar to that worn by the robber.

{¶6} "Ms. Bartels was shown two photo arrays April 7, 2012. She could not identify anyone in the first array as the robber. She picked out a photo from the second array, stating she was 70% sure it was the robber. The photo was not of Mr. Carver. A few days later, police showed Ms. Bartels a third photo array, including a photo of Mr. Carver. She picked the subject of a different photo as the suspect, stating she was 90% sure on that occasion.

{¶7} "Officer Martin Gilliland, a K-9 handler with the City of Kent Police Department, was first on the scene. Officer Gilliland briefly spoke with the two clerks, then had Ms. Bartels call the store manager, so he could view the security video. Officer Gilliland tried to track the suspect with his dog, which briefly lighted on a scent. However, the dog lost the scent near Burns Court, an alley near the Circle K.

{¶8} "Sergeant James Campbell of the Kent State University Police also responded to the crime scene. While driving down Burns Court, he spotted a red OSU hoodie, and reported the fact. Officer James Ennemoser, another K-9 handler with the City of Kent Police Department, quickly arrived, but his dog could not pick up any scent. Officer Ennemoser took possession of the red hoodie, turning it over to Officer Gilliland.

**{¶9}** "Bradley Barkhurst is a forensic analyst with the Ohio Organized Crime Investigations Commission, part of the Ohio Attorney General's office. He specializes in working with audio and visual evidence, and was employed in this investigation to enhance the images and audio from the Circle K surveillance video. He had little success. Mr. Carver has a tattoo of barbed wire on his right wrist, and wears a bracelet there. The suspect in the surveillance video had some marking on his right wrist, and a bracelet, but Mr. Barkhurst refused to testify they were the same as Mr. Carver's. He testified the hoodie in evidence, and the one depicted in the surveillance video, were similar, but admitted there appeared to be differences.

**{¶10}** "Catherine Dotts was Mr. Carver's fiancée at the time of the robbery. The couple lived with a woman named Twyla in Barberton, Ohio. Ms. Dotts kept all of her personal possessions in a duffel bag. Among those possessions were a red OSU hoodie, and a knife, she had inherited from her father, who died in late 2011. The duffel bag disappeared about April 2 or 3, 2012, shortly before the robbery. Ms. Dotts testified at trial the red hoodie placed in evidence was hers: she could recognize it because a draw string was missing, and the lettering damaged from washing.

**{¶11}** "Ms. Dotts testified that Mr. Carver gave her his backpack, filled with his personal belongings, just before his arrest on or about April 10, 2012. In his backpack, she was surprised to find her father's knife, which had gone missing with her duffel bag. Eventually, she gave the knife to police. This was the knife introduced into evidence at trial as the weapon used by the robber.

**{¶12}** "The surveillance video from the Circle K showed the robber wearing black Air Jordan tennis shoes. Ms. Dotts testified she gave Mr. Carver a pair shortly before

4

the robbery. Further, the video revealed, and the clerk Deborah Bartels testified, the robber had a trimmed goatee. Ms. Dotts testified Mr. Carver always wore a well-trimmed goatee, but shaved it just before his arrest. Ms. Dotts also testified Mr. Carver was in the habit of obtaining cell phones, and selling them at a store in Ravenna, Ohio.

**{¶13}** "Ms. Dotts also testified Mr. Carver always wore a black baseball cap. The robber's cap was tan. The parties stipulated Mr. Carver also wore a grey baseball cap.

**{¶14}** "Brenda Gerardi is a supervisor in the DNA unit of the Ohio Bureau of Criminal Identification and Investigation ('BCI'). Before reaching this position in September 2012, she spent 16 years as a forensic scientist in the BCI's forensic biology DNA section. She analyzed the hoodie recovered near the Circle K the night of the robbery. She testified she found a mixture of DNA on the hoodie, and that Mr. Carver could not be excluded as a contributor to the DNA found. She testified there was DNA from at least one other individual on the hoodie, consistent with Catherine Dotts' DNA. She concluded the DNA mixture would only match one in every 2,650,000 unrelated individuals. She further testified there was 'extraneous' DNA on the hoodie, possibly contributed by a third individual.

**{¶15}** "The jury commenced deliberations June 26, 2013, returning verdicts of guilty on each count June 27, 2013. Sentencing hearing was held July 29, 2013; the trial court filed its judgment entry of sentence August 5, 2013, merging the two counts for sentencing purposes. This appeal timely ensued, Mr. Carver assigning two errors. The first reads: 'The trial court's decision to find the accused guilty of aggravated robbery is against the manifest weight of the evidence.' In support of this assignment of

5

error, Mr. Carver points to the fact that neither of the store clerks could identify him as the man who robbed the Circle K and that Deborah Bartels picked photos of different men as the perpetrators out of the various photo arrays presented her. He notes that Ms. Dotts could not identify the robber as being him from the surveillance video, nor could Mr. Barkhurst, the state's visual and audio expert.

{¶16} "'"(M)anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶17} "'"In determining whether the verdict was against the manifest weight of the evidence, (* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) (* * *)" (Emphasis sic.)

{¶18} "'A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, * * * (* * *) (1997).

{¶19} "'With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, * * *, (* * *) paragraph one of the syllabus (1967).' (Parallel citations omitted.) *State v. Campbell*, 11th Dist. Ashtabula No. 2013-A-0047, 2014-Ohio-972, ¶29-32, quoting *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862,

6

*14-15 (Dec. 23, 1994).

**{¶20}** "The frailties in the state's evidence pointed out by Mr. Carver exist. However, he ignores the vital DNA evidence, putting his and Ms. Dotts' DNA on the red hoodie found near the crime scene. He ignores the fact Ms. Bartels testified the knife introduced into evidence looked like the knife used by the robber, and that Ms. Dotts found that knife in his backpack, and identified it as her father's knife which had disappeared. He ignores Ms. Dotts' identification of the hoodie as belonging to her. Given this evidence, we cannot find the jury lost its way." (Parallel citations omitted.)

**{¶21}** In *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, ¶15, the court stated:

**{¶22}** "The law of the case is a longstanding doctrine in Ohio jurisprudence. 'The doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' *Nolan v. Nolan*, 11 Ohio St.3d at 3, * * *. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32, * * *. It is considered a rule of practice, not a binding rule of substantive law. *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 404, * * *." (Parallel citations omitted.).

**{¶23}** Mr. Carver does not point to any reason our decision in *Carver* I does not constitute law of the case. We find it to be so.

7

{¶24} The assignment of error lacks merit. The judgment of the Portage County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶25} I concur in the ultimate judgment of this court. For the reasons stated in the prior appeal, however, this court should have addressed the merits of Carver's arguments as to the second Count of Aggravated Robbery despite the merger of the second Count into the first Count. *See State v. Carver*, 11th Dist. Portage No. 2013-P-0074, 2014-Ohio-5767, ¶ 26-36 (Grendell, J., dissenting in part).

{¶26} I further note that the Ohio Supreme Court has addressed the situation before this court in which an appellant attempts to argue the merits of his convictions after the case has been remanded solely for the purpose of merger: "In a remand based only on an allied-offenses sentencing error, the guilty verdicts underlying a defendant's sentences remain the law of the case and are not subject to review." *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 15.